UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LYDIA CATUY,

       Plaintiff,

vs.                Case No. 8:11-cv-1196-T-MCR

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

       Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Social Security Income ("SSI") on December 3, 2007. (Tr. 56-57). The Social Security Administration denied this application initially and on reconsideration. (Tr. 59-66, 69-71). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ"), which was held on December 18, 2009. (Tr. 29-55). The ALJ issued a decision on February 11, 2010 finding Plaintiff not

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 12).

disabled. (Tr.11-23). The Appeals Council denied Plaintiff's request for review on September 24, 2010. (Tr. 4-6). Plaintiff timely filed her Complaint in the U.S. District Court for review of the Commissioner's decision. (Doc. 1). This case is now ripe for review.

## II. NATURE OF DISABILITY CLAIM

### A. Basis of Claimed Disability

Plaintiff claims she became disabled on February 1, 1993 due to a gunshot wound to the leg, back pain, and dropped left foot. (Tr. 117, 168).

### B. Summary of Evidence Before the ALJ

Plaintiff was 30 years old at the time of the ALJ's decision on February 11, 2010. (Tr. 23, 117). She has an 11th grade education and past relevant work experience as a cashier, sandwich maker, and survey work. (Tr. 35, 51, 167-68). Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.

Plaintiff was shot by her brother in 1993 when she was 13 years old. (Tr. 37). Plaintiff was in a wheelchair for two years but is now able to walk with a cane. (Tr. 37-38). Although the record does not contain medical records from Plaintiff's 1993 injury; numerous early treatment notes document complaints of left leg and low back pain. (Tr. 436, 443, 445).

On January 4, 2006, a physical consultative exam was performed. (Tr. 336-42). The examination documented lack of sensation to touch and pin prick in Plaintiff's left leg. It was noted that Plaintiff had a left foot drop and severe limp when walking without a cane, but she could move more steadily with a cane. She could not tandem walk,

heel toe walk, hop, or squat.  The doctor's impression was left paresis and he opined "[Plaintiff] can sit, stand and walk for up to 2 hours in an 8 hour workday." (Id.).

On February 28, 2008, Dr. Robin Hughes conducted a consultative examination. (Tr. 377-82).  Dr. Hughes found Plaintiff suffered from left lumbar spasm and positive straight leg raising on the left.  Dr. Hughes also observed atrophy and decreased deep tendon reflexes to the left leg/foot with drop foot.  Dr. Hughes noted Plaintiff was unable to walk on her heels, toes, squat, or deep knee bend.  Plaintiff arose from the chair and moved about the room with some difficulty and had an antalgic gait with foot drop.  Dr. Hughes indicated Plaintiff did not require an assistive device.  (Tr. 378).  Dr. Hughes' impression was gunshot wound with spinal cord injury and resultant left leg neuropathy and foot drop.  (Tr. 379).

Plaintiff was treated at Mental Health Care, Inc. three times in 2005 for bizarre behavior, auditory hallucinations, psychosis, and post traumatic stress disorder.  (Tr. 19, 316-20, 458-60).  During each hospitalization, Plaintiff demonstrated improvement after receiving medicine and therapy.  (Tr. 316-20).  Plaintiff continued outpatient treatment with medications until February 23, 2006 and was reportedly doing better.  (Tr. 314-15). Plaintiff returned to Mental Health Care, Inc. on May 7, 2008 due to depression and anger; however, her case was closed on September 3, 2008 because she did not continue therapy.  (Tr. 465).  On November 6, 2009, Plaintiff again returned to Mental Health Care, Inc. complaining of depression, difficulty concentrating, decreased concentration, decreased appetite, decreased energy, irritability, mood swings, and nightmares.  (Tr. 537-57).  Her psychomotor was documented to be hyperactive and

excessively fidgety and her mood was dysphoric and with moderate problems with concentration. (Tr. 540-41). Her diagnosis was major depressive disorder with psychotic features. (Tr. 554-55).

Plaintiff was evaluated by Dr. John Dsurney on December 20, 2005 and again on March 30, 2006. (Tr. 342). Dr. Dsurney indicated that Plaintiff had a full scale IQ of 76. (Tr. 343). Plaintiff reported that she suffered from depression, low energy, poor appetite, vague auditory hallucinations, and memory problems. Dr. Dsurney noted that Plaintiff's gait was "shuffling and she ambulated with the use of a cane." (Tr. 343). Test results indicated variable performance on memory and malingering tests. (Tr. 339). Dr. Dsurney noted that her behavior was somewhat inconsistent with her reported ability to care for four children. (Tr. 339).

On February 26, 2008, Plaintiff was examined by consultative psychologist Cecilia Yocum. Plaintiff exhibited bizarre behavior by continuously asking for pain medication and wanting to stay with Dr. Yocum after the exam. Plaintiff's testing scores for malingering were significant. Dr. Yocum was unable to make a diagnosis due to Plaintiff's bizarre behavior and elevated scores for malingering. (Tr. 397-400, 392-95).

### C.  **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20

C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. §§ 404.1520(b), 416.920(a)(2)(I). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(a)(2)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(a)(2)(iii). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(a)(2)(iv). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. §§ 404.1520(f), 416.920(a)(2)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 1, 1993, the alleged onset date. (Tr. 16). At step two, the ALJ found Plaintiff suffered from the following severe impairments: back pain, status post gunshot wound to the lower back, left leg sciatica with neuropathy, left foot drop, and schizoaffective disorder. (Tr. 16-17). At step three, the ALJ found Plaintiff did not have an impairment, or combination of impairments, that met or equaled

any listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (Tr. 17-18).

The ALJ further determined Plaintiff had the residual functional capacity ("RFC")[2] to perform sedentary work,[3] except:

> she can never climb ladders, ropes, or scaffolds and can only occasionally balance, stoop, kneel, crouch, or crawl; she must avoid environments of concentrated vibration or hazardous machines or materials; she can perform only simple, repetitive tasks and is limited to occasional interaction with the public.

(Tr. 18-21). In reaching this conclusion, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms not completely credible. (Tr. 20).

At Plaintiff's hearing, the ALJ utilized the testimony of a vocational expert (the "VE"). The ALJ posed hypothetical questions to the VE that included Plaintiff's symptoms and their resulting limitations. Based on the hypothetical questions posed, the VE testified that Plaintiff's past relevant work exceeded the ability of her RFC. (Tr. 21-22). The ALJ then asked the VE whether a person with Plaintiff's RFC could perform any other jobs existing in significant numbers in the national economy. The VE replied that a person with Plaintiff's RFC could perform representative occupations such as

---

[2] The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. §§ 404.1545, 416.945. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

ampoule sealer, final assembler, or security monitor, which all exist in significant numbers in the national economy.  (Tr. 22).  Therefore, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act.  (Tr. 23).

## III.     ANALYSIS

### A.     The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837

(11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.  Issues on Appeal

Plaintiff raises the following three issues on appeal: (1) whether the ALJ properly considered Plaintiff's subjective complaints of pain (Doc. 22, pp. 7-11); (2) whether the ALJ's hypothetical question posed to the VE properly described all of Plaintiff's limitations (id. at pp. 11-13); and (3) whether the ALJ properly considered Plaintiff's borderline functioning (id. at pp.13-15).  In addition, Plaintiff seeks remand, pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of psychiatric treatment records dated February 9, 2010.  (Doc. 25).  The Court will address each of these issues.

#### 1.  Whether the ALJ properly considered Plaintiff's subjective complaints of pain.

Plaintiff argues that the ALJ failed to properly evaluate her subjective complaints of disabling symptoms and pain.  (Doc. 22, pp. 7-11).  In response, the Commissioner contends that in making his RFC finding, the ALJ properly considered Plaintiff's subjective complaints of pain.  (Doc. 23, pp. 4-10).

The standard for evaluating subjective complaints requires the following:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain/limitations arising from that condition or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain/limitations.

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  A claimant's statements about pain or other

symptoms will not alone establish disability. See 20 C.F.R. §§ 404.1529(a), 416.929(a). Rather, medical signs and laboratory findings must be present showing a medical impairment(s) that could reasonably be expected to produce the symptom(s) alleged. Id.; see also Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991). When an impairment that could reasonably be expected to produce the symptoms alleged has been shown, the intensity and persistence of the symptoms, such as pain, will be evaluated based on all the evidence. See 20 C.F.R. §§ 404.1529(c), 416.929(c). The district court reviews the ALJ's credibility determination to determine whether, as a whole, it is supported by substantial evidence of record. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Though the ALJ's credibility determination cannot be so broad to prevent subsequent review, the ALJ need not cite to particular phrases or formulations in making his credibility determination. Id. at 1210. The nature of a claimant's symptoms, the effectiveness of medication, the claimant's activities, and other factors are relevant in the consideration of subjective symptoms such as pain. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Macia v. Bowen, 829 F.2d 1009 (11th Cir. 1987).

Here, the ALJ determined that Plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of her alleged symptoms, including pain, were not completely credible. (Tr. 20). In support of his credibility determination, the ALJ cited Plaintiff's lack of medical treatment and her capability to engage in substantive activities. (Id.).

With regard to Plaintiff's physical impairments, the ALJ found that Plaintiff suffered from an abnormality in the left lower extremity due to a gunshot wound, resulting in chronic back pain and left leg sciatica with neuropathy.  (Tr. 21, 377).  However, Plaintiff has exhibited normal motor strength bilaterally, has no impairment in her right leg, and only minimal findings in the lumbar spine.  (Tr. 338, 377, 479).  Dr. Hughes noted that Plaintiff was able to rise from a chair and move about the room without an assistive device.  (Tr. 378).  In addition, Plaintiff's musculoskeletal impairments have been treated conservatively with medication.[4]

With regard to Plaintiff's mental impairments, the objective evidence shows that medication improved Plaintiff's symptoms, thereby undermining her allegations of disabling symptoms.[5]  Plaintiff was hospitalized three times in 2005 for bizarre behavior, auditory hallucinations, psychosis, and post traumatic stress disorder.  (Tr. 19, 316-20).  However, during each hospitalization, Plaintiff demonstrated improvement in symptoms after receiving medication and therapy.[6]  (Tr. 316-20).  Plaintiff returned to Mental Health Care, Inc. on May 7, 2008 due to depression and anger; however, her case was closed on September 3, 2008 because she did not continue therapy.  (Tr. 465).

---

[4] The Eleventh Circuit has stated that an ALJ may properly consider a claimant's course of "conservative" treatment as evidence that contradicts a claimant's subjective complaints of disabling symptoms.  See Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996).

[5] Medical conditions that are controlled with medication are not disabling.  See Fraga v. Bowen, 810 F.2d 1296, 1305 (5th Cir. 1987); see also Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (medical conditions that can reasonably be remedied by medication are not disabling).

[6] Plaintiff testified at the hearing that medication helped her with her hallucinations.  (Tr. 47). In addition, in September 2005, Plaintiff stated that her medication helped decrease her negative ruminations and anger and improved her sleep.  (Tr. 315).

Plaintiff's activities further support the ALJ's credibility determination. As the ALJ noted, Plaintiff goes to church every Sunday, hosts weekly Bible study at her home, enjoys hair styling, cooking, and reading, uses e-mail, shops, washes dishes, and does housework with her boyfriend and family member's help. (Tr. 20, 41-43). In addition, Plaintiff cares for her toddler son, who has cerebral palsy. (Tr. 34, 240). In a typical day, Plaintiff cooks breakfast for her children, gets them ready for school, walks them to school, cleans the house, prepares dinner, picks her children up from school, helps her children with their homework, bathes her children, and puts her children to bed. (Tr. 240). Plaintiff further stated that she has no problems with personal care and is able to do laundry and iron. (Tr. 234-35).

Plaintiff argues that the opinion from the medical examiner supports her subjective complaints. (Doc. 22, pp. 9-10). Specifically, the medical examiner opined that Plaintiff could only sit, stand, and walk for up to 2 hours in an 8 hour work day. (Tr. 341). The Court finds that the medical examiner's limitations on standing and walking are consistent with the ALJ's RFC; however, the proposed limitation on sitting is not supported by the record evidence. As an initial matter, the Court notes that Plaintiff was able to work for several years after she sustained the gunshot wound in 1993. (Tr. 228). In addition, the objective medical records do not reflect any limitations on Plaintiff's ability to sit. Beyond Plaintiff's subjective complaints, the record is void of any evidence that Plaintiff is unable to sit for more than 2 hours.

In light of the foregoing, the Court finds Plaintiff's argument regarding the ALJ's credibility determination fails.

## 2. Whether the ALJ's hypothetical question posed to the VE properly described all of Plaintiff's limitations.

Plaintiff contends that the ALJ's hypothetical question posed to the VE was incomplete because it did not include the consultative examiner's limitations. (Doc. 22, pp. 11-13). In response, the Commissioner argues that the hypothetical question posed included all of Plaintiff's credible limitations. (Doc. 23, pp. 10-12).

The ALJ asked the VE to consider an individual with Plaintiff's vocational profile and the following RFC:

> sedentary work, standing or walking approximately 2 hours, sitting for 6 hours, never climbing ladders, ropes, or scaffolds, occasional climbing of ramps and stairs, balancing, stooping, crouching, kneeling, and crawling, avoidance of concentrated exposure to excessive vibration and hazards, and work that is simple, routine, repetitive with occasional interaction with the public.

(Tr. 51-52).[7] In response, the VE testified that Plaintiff could not perform her past relevant work, but could perform work as an ampoule sealer, final assembler, and security monitor. (Tr. 53).

Plaintiff contends that the ALJ's hypothetical question was incomplete because it did not include the consultative examiner's opined limitations on sitting, standing, and walking (up to 2 hours in a day). (Doc. 22, p. 12). As discussed above, the Court finds that the consultative examiners 2 hour limitation on sitting is not supported by the record evidence. Therefore, the ALJ was justified in rejecting that limitation and finding that

---

[7] These are the same limitations that the ALJ assessed in his RFC determination. (Tr. 18).

Plaintiff could perform sedentary work, with some limitations. See 20 C.F.R. §§ 404.1567(a), 416.967(a).

### 3. Whether the ALJ properly considered Plaintiff's borderline functioning.

Plaintiff argues that the ALJ erred in finding that Plaintiff's alleged borderline functioning was not a severe impairment. (Doc. 22, pp. 14-15). In response, the Commissioner contends the ALJ properly found that Plaintiff suffered from the following severe impairments: back pain, status post gunshot wound to the lower back, left leg sciatica with neuropathy, left foot drop, and schizoaffective disorder, and then proceeded to step five in the sequential evaluation process. (Doc. 23, pp. 12-14).

With regard to severe impairments, the relevant question is the extent to which Plaintiff's impairments limit her ability to work. See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). Here, the ALJ found that Plaintiff could perform sedentary work with various limitations, including a restriction to simple, repetitive tasks and only occasional interaction with the public. (Tr. 18). Plaintiff has failed to show how her low intelligence level imposed more restrictions than those found by the ALJ. Therefore, Plaintiff failed to meet her burden of proving that she had actual, specific limitations, caused by her borderline intellectual functioning, beyond what the ALJ found. See McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) (the severity of a medically ascertained impairment must be measured in terms of its effect upon a claimant's ability to work and not simply in terms of deviation from medical standards of bodily normality).

An impairment or combination of impairments is not severe if it does not significantly limit one's physical or mental ability to do basic work activities. See 20

C.F.R. §§ 404.1521, 416.921; Gray v. Comm'r of Soc. Sec., No. 10-14359 (11th Cir. May 11, 2011). As the ALJ noted, Plaintiff attended school through the 11th grade, has been able to care for herself and her children, and previously worked as a cashier. (Tr. 17, 35, 228). In addition, Plaintiff testified that she attended classes for physically handicapped students, but not special education classes for student with mental impairments. (Tr. 52). Plaintiff has not provided evidence showing that her borderline functioning significantly impairs her ability to perform work-related activities. Therefore, substantial evidence supports the ALJ's step two and RFC findings.

Moreover, as the Eleventh Circuit has stated, "[t]he finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." Burgin v. Commissioner of Social Security, No. 10-13394, 2011 WL 1170733, at *1 (11th Cir. 2011). Here, the ALJ found a severe impairment at the second step of the sequential evaluation and then proceeded to consider the claimant's condition and the record as a whole through step five. (Tr. 16-23). The ALJ considered all of Plaintiff's severe and non-severe impairments, as well as Plaintiff's subjective complaints to determine her RFC. (Tr. 17-20).

Plaintiff also argues that the ALJ should have further developed the record regarding Plaintiff's IQ. (Doc. 22, p. 14). The overall burden to prove "disability" lies with Plaintiff. See 20 C.F.R. §§ 404.1512(c), 416.912(c). Although the ALJ has a duty to fully and fairly develop the record, an ALJ does not act as counsel, but rather, he is

the examiner charged with developing the facts. See Smith v. Schweiker, 677 F.2d 826, 829 (11th Cir. 1982). There must be a showing of prejudice to the claimant in order for the reviewing court to remand the case to the Commissioner for further development of the record. See Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995). Here, Plaintiff has demonstrated no such prejudice to warrant remand of this case for further development.

### 4. Plaintiff's Motion to Remand Pursuant to Sentence Six

On March 21, 2012, Plaintiff motioned this Court for remand pursuant to sentence six of 42 U.S.C. § 405(g). (Doc. 25). On April 3, 2012, the Commissioner filed a response in opposition to Plaintiff's request, arguing that the evidence Plaintiff seeks to admit for consideration on remand is not material and Plaintiff has failed to demonstrate good cause for her failure to submit the evidence at the administrative level. (Doc. 26).

As noted above, Plaintiff's administrative hearing took place on December 18, 2009, and the ALJ issued his unfavorable decision on February 11, 2010. (Tr. 11-23, 29-55). Through her attorney, Plaintiff requested review of the ALJ's decision on March 1, 2010.[8] (Tr. 8). The AC denied Plaintiff's request for review on September 24, 2010.

---

[8] Plaintiff appointed Kevin Hartman as her attorney representative on December 3, 2007. (Tr. 31, 75). Mr. Hartman represented Plaintiff at the hearing before the ALJ and at the Appeals Council level.

(Tr. 4-6). Plaintiff now seeks remand, pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of psychiatric treatment records from February 9, 2010.[9]

Under sentence six of 42 U.S.C. § 405(g), this Court may remand this case to the Commissioner if the Court finds that the evidence is new and material and that good cause exists for Plaintiff's failure to present this evidence into the record during the administrative proceedings. In order to show that remand is appropriate, Plaintiff must establish that:

> (1)   there is new, noncumulative evidence;
> (2)   the evidence is "material," that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and
> (3)   there is good cause for failure to submit the evidence at the administrative level.

Vega v. Commissioner of Social Security, 265 F.3d 1214, 1218 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998) and Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986)).

As the February 9, 2010 treatment notes were dated two days prior to the ALJ's decision, good cause exists for Plaintiff not submitting those records at the administrative level. However, Plaintiff has not shown good cause for failing to submit the records to the AC before it issued its decision on September 24, 2010. (Tr. 4-6). Without a showing of good cause for failure to submit the evidence, remand is not appropriate. See Falge, 150 F.3d at 1323-24 (holding that remand under sentence six

---

[9] This date is two days prior to the ALJ's hearing decision, nearly a month prior to Plaintiff's request for review, and more than seven months prior to the AC's denial of her request for review.

is only possible if the claimant both alleges and shows good cause as to why such evidence was not presented earlier).

In addition, remand is not appropriate here because Plaintiff failed to demonstrate how the February 9, 2010 treatment notes are material. See Id. at 1323. In order to be "material," the evidence must be relevant and probative so that there is a reasonable possibility that it would change the administrative result. Id. Plaintiff argues that the information is material because it indicates a greater severity of both mental and physical impairments than the medical evidence upon which the ALJ relied. (Doc. 25). However, Plaintiff has failed to explain how the new records indicate a greater severity and how that severity impacts her ability to function. Even if the new records confirm the existence of a severe mental impairment, they would not likely change the administrative result because they do not set forth actual, specific limitations, corroborated by the evidence, that Plaintiff has due to her impairments. See McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) (the severity of a medically ascertained impairment must be measured in terms of its effect upon a claimant's ability to work and not simply in terms of deviation from medical standards of bodily normality).

Because these records fail to provide any information regarding limitations, they would not likely change the administrative result. Thus, this evidence does not satisfy the materiality requirement for a remand.

## IV.   CONCLUSION

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence.

As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED**.  The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  9th  day of August, 2012.

                                                                                    _____
                                                                                    MONTE C. RICHARDSON
                                                                                    UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record